UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                  :

RAMI SHAMIR,

                                                  :       10 Civ. 00725 (PGG) (DF)

                     Plaintiff,

                                                    :

          -against-                   **REPORT AND**

                                                    :       **RECOMMENDATION**

ANCHOR-INTERNATIONAL                  :
FOUNDATION, INC., et al.,

                                                    :

                     Defendants.
-----------------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

       In this action, plaintiff Rami Shamir ("Plaintiff") claims that defendants Anchor-

International Foundation, Inc. ("Anchor"), Circles International ("Circles"), Richard Torrence

("Torrence"), and Marshall Yaegar ("Yaegar") (collectively, "Defendants") engaged in

copyright infringement and also violated Plaintiff's state common-law and statutory rights, by

unlawfully selling, on the Internet, a novel written by Plaintiff.  The Honorable

Paul G. Gardephe, U.S.D.J., has entered default judgment in Plaintiff's favor and has referred the

matter to this Court to conduct an inquest and to report and recommend concerning Plaintiff's

damages.  For the following reasons, I recommend granting Plaintiff an award of statutory

damages, pursuant to 17 U.S.C. § 504(c), in the amount of $5,000.  I further recommend denying

Plaintiff's request for attorneys' fees and costs.

**BACKGROUND**

A.      **Factual Background**

The following facts are set forth in Plaintiff's Complaint.[1]  Plaintiff is the author of the

novel "Train To Pokipse," for which he obtained a copyright in 2007.  (Complaint, dated Jan. 29,

2010 ("Compl.") (Dkt. 1), at ¶¶ 4, 10.)  Defendant Anchor is a not-for-profit organization that

owns defendant Circles, a publishing company.  (*Id.* at ¶¶ 5, 6.)  Defendant Torrence, who is

now deceased,[2] was the executive director of Anchor, and defendant Yaeger is the president of

Circles.  (*Id.* at ¶¶ 8, 9.)  In May of 2009, Yaeger and Torrence, on behalf of Anchor, offered

Plaintiff a grant to assist Plaintiff with the publication of "Train to Pokipse."  (*Id.* at ¶¶ 11, 12.)

Yaeger also worked with Plaintiff on copy-editing the book, and, by September of 2009,

Defendants had printed "advanced reader's copies" of "Train to Pokipse."  (*Id.* at 14, 16.)

Although Plaintiff received a financial grant from Defendants, Plaintiff never transferred any of

his copyright or publication rights to Defendants.  (*Id.* at ¶¶ 13, 17.)  Further, Plaintiff had

informed Defendants that they did not have any publishing or other rights to "Train to Pokipse."

(*Id.* at 17.)

In October of 2009, however, Plaintiff discovered that Defendants were selling his novel

through Defendants' website and various other third-party websites.  (*Id.* at ¶¶ 17, 18.)  On

October 9, 2009, Plaintiff sent an e-mail to Lightning Source,[3] a publishing company used by

---

[1] These facts are deemed admitted as a result of defendants' default.  (*See infra* at Discussion Section I.)

[2] *See* http://www.highbeam.com/doc/1P3-2388623471.html (reporting that Torrence died on February 7, 2011).

[3] Lightning Source was originally named as a defendant in this action (*see* Compl.), but Plaintiff voluntarily dismissed his claims against Lightning Source, with prejudice, on

Circles, demanding that Lightning Source "immediately cease and desist [its] infringing activities." (*Id.* at ¶¶ 7, 20.) Lightning Source responded that all inquiries should be directed to Yaeger, and forwarded the e-mail to Yaeger. (*Id.* at ¶ 20.) Plaintiff sent another cease and desist letter to Defendants on November 11, 2009. (*Id.* at ¶ 21.)

### B.   Procedural History

#### 1.   Plaintiff's Complaint and Defendants' Default

Plaintiff filed his Complaint against Defendants on January 29, 2010, claiming copyright infringement, pursuant to 17 U.S.C. §§ 106(1), (3), and (5); invasion of privacy, in violation of New York Civil Rights Law § 51; and Misappropriation and Unfair Competition, under New York common law. (*See generally* Compl.)

On February 11, 2010, Judge Gardephe granted Plaintiff's motion for a preliminary injunction against Defendants, enjoining them from taking any action that infringed Plaintiff's copyright. (*See* Order, dated Feb. 11, 2010 (Dkt. 10).) On May 3, 2010, Judge Gardephe then issued an Order requiring Defendants to show cause why a default judgment should not be entered against them for failing to answer Plaintiff's Complaint. (Order To Show Cause, dated May 3, 2010 (Dkt. 13).) The Court directed Defendants to serve and file any response to the Order To Show Cause by May 13, 2010 (*id.*), but no such response was filed.

On May 16, 2010, Plaintiff moved for a default judgment against Defendants. (*See* Memorandum of Points and Authorities in Support of Motion for Judgment by Default, dated May 16, 2010 (Dkt. 14).) Judge Gardephe entered a default judgment against Defendants on

---

February 10, 2010 (*see* Notice of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(i), dated Feb. 10, 2010 (Dkt. 9)).

May 18, 2010 and referred the matter to me for an inquest into damages.  (Order, dated May 19, 2010 (Dkt. 15).)

### 2.    Plaintiff's Initial and Supplemental Inquest Submissions

On June 8, 2010, this Court issued a Scheduling Order, requiring Plaintiff to file and serve on Defendants Proposed Findings of Fact and Conclusions of Law concerning damages, no later than July 9, 2010, and requiring Defendants to submit their responses, if any, no later than August 9, 2010.  (*See* Scheduling Order for Damages Inquest, dated June 7, 2010 (Dkt. 17).) The Court advised Plaintiff that his proposed findings of fact should "specifically tie the proposed damages figure(s) to the legal claim(s) on which liability has now been established; should demonstrate how Plaintiff has arrived at the proposed damages figure(s); and should be supported by an affidavit attaching as exhibits and containing an explanation of any documentary evidence that helps establish the proposed damages."  (*Id.*)

After being granted a short extension of the July 9 deadline, Plaintiff submitted his Proposed Findings of Fact and Conclusions of Law on July 12, 2010.  (*See* Proposed Findings of Fact and Conclusions of Law with Respect to Damages ("Proposed Findings"), dated July 9, 2010 (Dkt. 23).)  Plaintiff's Proposed Findings, however, did not include sufficient evidentiary support for either the fees or the costs requested.  This led the Court to issue another Order, requiring Plaintiff to submit further support for his request for attorneys' fees and costs, no later than August 20, 2010.  (*See* Supplemental Scheduling Order For Damages Inquest*, dated July

30, 2010 ("7/30/10 Order") (Dkt. 18).)[4]   The Court gave Plaintiff the following instruction

regarding the required showing for a request of attorneys fees or costs:

> A party seeking attorneys' fees has the burden of demonstrating that its requested fees are reasonable.  *See Blum v. Stenson,* 465 U.S. 886, 897 (1984).  To that end, a fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983).  In addition, in order for the Court to assess whether an attorney's hourly rate is reasonable, information should be provided regarding both the rate charged by that attorney and his or her level of experience.  Generally, an attorney's hourly rate will be considered reasonable if it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum,* 465 U.S. at 896.  A request for costs must likewise be supported by appropriate affidavits and documentation.  *See, e.g.,* 28 U.S.C. § 1924.

(*Id.*)  The Court warned that "[i]f Plaintiff fails to submit sufficient support by [August 20,

2010], this Court will recommend that Plaintiff's request for fees and costs be denied."  (*Id.*)  The

Court ordered Defendants to submit their responses, if any, no later than September 17, 2010.

(*Id.*)

On August 20, 2010, Plaintiff filed a Supplemental Submission with Respect to

Damages.  (*See* Supplemental Submission.)  In addition to clarifying that he is seeking $150,000

per defendant in statutory damages for the copyright infringement claim, Plaintiff asked the

Court for $38,176.00 in attorneys fees, and $1,500 in legal costs.  (*Id.*)  In neither of his

---

[4] In its July 30, 2010 Order, the Court apparently misconstrued Plaintiff's Proposed Findings as only seeking legal costs and attorneys' fees, and not seeking statutory or other damages.  (*See* Dkt. 18, at 1.)  Plaintiff has now highlighted for the Court that his Proposed Findings did, in fact, seek statutory copyright damages.  (*See* Plaintiff's Supplemental Submission With Respect To Damages, dated Aug. 20, 2010 ("Supplemental Submission") (Dkt. 19).)

submissions, though, did Plaintiff either identify or submit any support for damages on his state-law claims.  (*See id.*; *see also* Proposed Findings.)

### 3.    Defendants' Responses to Plaintiff's Submissions

After Plaintiff submitted his initial Proposed Findings in July 2010, Yaeger submitted a responsive letter, dated August 2, 2010.  (Letter to the Court, from Marshall Yaeger, dated Aug. 2, 2010 ("8/2/10 Yaeger Ltr.") (Dkt. 22).)[5]  Not only is Yaeger's submission not sworn or made under penalty of perjury, but the letter was written on the letterhead of Anchor-International Foundation, Inc.  (*See id.*)  Yaeger appears to have signed it in his capacity of "Administrator" (*see id.*), although a *pro se* litigant may only speak on his *own* behalf in the Court, not on behalf of a corporation.[6]  Further, Yaeger's letter does not reflect that a copy was served on Plaintiff, and the letter presents several arguments regarding liability, which, as already noted (*see* n.5, *supra*), is not an issue before this Court.  Yaeger's letter does, however, request an in-person hearing on the damages inquest.  (*See* 8/2/10 Yaeger Ltr.)

The Court received no submission from, or on behalf of, defendant Torrence, and no submissions from any attorney representing either of the corporate defendants, either after Plaintiff's initial submission or after his supplemental one.  Accordingly, on November 23, 2010,

---

[5] Yaeger also sent this Court an earlier letter, which was received by the Court on June 15, 2010, prior to the Court's receipt of any proposed findings from Plaintiff.  (Letter to the Court from Marshall Yaeger, dated June 10, 2010.)  With that earlier letter, Yaeger provided the Court with several documents, including copies of five letters previously sent to Judge Gardephe, with attachments; copies of several emails to nonparties; copies of an email and a letter sent to counsel for Plaintiff; and what appear to be some receipts from online purchases.  As this submission appears to constitute argument by Yaeger on the issue of his liability (a matter that was decided in Plaintiff's favor, as a result of Yaeger's default), and does not address the question of damages, the submission is not relevant here.

[6] *See Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 192 (2d Cir. 2006) (cited *infra* at 7).

this Court issued another Order, to give these defendants a final opportunity to respond to

Plaintiff's Proposed Findings on damages. (Scheduling Order For Damages Inquest, dated

Nov. 23, 2010 (Dkt. 20).) The Court explicitly cautioned defendants Anchor and Torrence that

the Court could not construe Yaeger's letters as submissions their behalf, noting that

corporations may only appear through counsel in this Court. Specifically, the Court stated:

> [D]efendant Yaeger, who is apparently not an attorney, submitted
> various letters to the Court, purportedly on behalf of defendant
> Anchor-International. Corporations, however, may not appear in
> this Court without being represented by counsel. *See, e.g.,*
> *Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 192 (2d Cir. 2006)
> ("'[I]t is settled law that a corporation may not appear in a lawsuit
> against it except through an attorney, and that, where a corporation
> repeatedly fails to appear by counsel, a default judgment may be
> entered against it.'" (quoting *SEC v. Research Automation Corp.*,
> 521 F.2d 585, 589 (2d Cir. 1975))). For this reason, this Court
> cannot accept or consider any submissions that Yaeger may have
> been attempting to make on behalf of Anchor-International.
> Moreover, while individuals who are not attorneys admitted to the
> bar of this Court are permitted to appear in the Court *pro se* (*i.e.,*
> on their *own* behalf), they may not act on behalf of other individual
> parties. Thus, the Court also cannot accept Yaeger's submissions
> as having been made on behalf of defendant Torrence. At most,
> the Court can accept Yaeger's submissions as having been made
> on his *own* behalf. As [Anchor and Torrence] may not have
> understood how to proceed if they wished to oppose Plaintiff's
> submissions, the Court will afford them a final opportunity to
> make appropriate submissions in opposition.

(*Id.*) The Court gave Anchor and Torrence until December 3, 2010 to oppose Plaintiff's

Proposed Findings and Supplemental Submission. (*Id.*)

On December 3, 2010, the Court finally received a submission from defendant Torrence.

(Submission from Richard Torrence, dated Dec. 1, 2010 (Dkt. 21).) The submission was signed

by Torrence before a notary public, and it reflects that a copy was mailed to Plaintiff. (*Id.*) It

appears, however, that Torrence intended this submission to constitute an appeal of the default

7

judgment entered by Judge Gardephe.  (*See id.* at 3 ("The judge appeared to be understanding of the danger of the situation, and his clerk advised Yaeger that if he did not show up for trial, there would be a default judgment, which he could appeal later.  This letter constitutes that appeal on behalf of, and by, Richard Torrence.").)  In his submission, Torrence also discussed the status of defendants Anchor and Circles, even though, as the Court had previously explained, Torrence, who was apparently not an attorney, could not speak for those entities in this proceeding.

The Court received additional letters from Yaeger on January 13 and 16, 2012.  In those letters, Yaeger again contested liability, but also claimed that he did not have the financial ability to pay any type of judgment.  (Letter to the Court, from Marshall Yaeger, dated January 13, 2012 (Dkt. 28); Letter to the Court, from Marchall Yaeger, dated January 16, 2012 (Dkt. 29).)

### 4.   Hearing Before the Court

Given that, in one of his submissions, Yaeger had requested an evidentiary hearing on the issue of damages, the Court scheduled a hearing for January 24, 2012.  (*See* Memorandum and Scheduling Order For a Damages Inquest, dated Dec. 19, 2011 ("12/19/11 Order") (Dkt. 24).) The purpose of the hearing was to afford defendants Yaeger (and the estate of Torrence, who had, by then, passed away) an opportunity to be heard, if desired, and to enable the Court to evaluate more fully Plaintiff's request for damages pursuant to 17 U.S.C. § 504(c)(2), and for attorneys fees and costs pursuant to 17 U.S.C. § 505.[7]  As the Court had not received any filings by any attorney acting on behalf of Anchor or Circles, in opposition to Plaintiff's Proposed Findings and Supplemental Submission, this Court expressed its intention to determine the

---

[7] As Plaintiff had not requested damages pursuant to his claims for invasion of privacy in violation of New York Civil Rights Law § 51, and Misappropriation and Unfair Competition under New York's common law, the Court considered claims for damages for those claims to have been waived.

question of damages as against those corporations on the basis of Plaintiff's written submissions alone. (*See* 12/19/11 Order.) The Court warned: "[I]f Yaeger or the estate of Torrence (through a proper representative) do not appear at the hearing to contest the requested damages and fee award, then this Court will determine the appropriate amount of damages, fees, and costs based on Plaintiff's submissions alone." (*Id.*)

Neither Yaeger nor any representative of Torrence's estate appeared for the hearing. Plaintiff appeared, however, and he testified under oath that, despite Plaintiff's cease and desist letters, the Defendants continued to sell Plaintiff's novel through Defendants' website and various other third-party websites. (*See* Transcript of Evidentiary Hearing, dated Jan. 24, 2012 "Hearing Tr.") (Dkt. 25), at 6.) Plaintiff further testified that he had to contact the various third parties in order to shut down the unauthorized sale of "Train to Pokipse." (*Id.*) He also testified that the "advanced reader's copies" of "Train to Pokipse" that Defendants offered for sale were not yet ready for public release. (*Id.*) Plaintiff testified to his belief that he had been damaged by the release of his unfinished work, to his attempt to collect from Defendants all copies of the book, and to the fact that he was able collect all but "a hundred or so" of the books. (*Id.* at 7.) Plaintiff testified that he, himself, had not yet sold any copies of the book, and that he did not know whether the Defendants were ever successful in selling the book. (*Id.* at 6.)

The Court sent a copy of the hearing transcript to Yaeger and the Administrator of Torrence's estate. Yaeger responded with a letter to the Court, which, again, contested liability, but which also asserted that only 100 "advanced reading copies" of "Train to Pokipse" were ever printed by the Defendants. (Letter to the Court, from Marshall Yaeger, dated February 4, 2012 (Dkt. 30.) The Court received no communication from the estate of Torrence.

<u>DISCUSSION</u>

I.     <u>PLAINTIFF'S REQUEST FOR STATUTORY DAMAGES</u>

      A.     <u>Applicable Legal Standards</u>

            1.     <u>Establishment of Liability by Default</u>

Upon the default of a defendant, the Court must accept all of the factual allegations of a complaint as true, except those relating to damages. *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); 10 Moore's Federal Practice § 55.23(c) (3d ed. 2011). Thus, a default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability, *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995); *S.E.C. v. Management Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975), and the sole issue that remains before the Court is whether the plaintiff has provided adequate support for the relief he seeks, *see Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied,* 506 U.S. 1080 (1993); *Deshmukh v. Cook*, 630 F. Supp. 956, 959 (S.D.N.Y. 1986) (when a defendant defaults, "the factual allegations of the complaint relating to liability are taken as true, but the allegations relating to the amount of damages are not").

            2.     <u>Available Damages Under the Copyright Act</u>

Under the Copyright Act, a plaintiff may elect to recover an award of statutory damages for each infringed work, in lieu of an award of actual damages. 17 U.S.C. § 504(c). Statutory damages range from $750 to $30,00 per work infringed, "as the court considers just." *Id.* If the court finds willful infringement, however, the award can be as high as $150,000; if the court finds that the infringement was "innocent," damages can be as low as $200. *See id.* A copyright holder seeking to prove that a copier's infringement was willful must show that the infringer

"had knowledge that its conduct represented infringement or . . . recklessly disregarded the possibility." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir.1993). Courts will infer willful infringement from the fact that a defendant engages in infringing activity after receiving warning that the activity constitutes infringement. *See EMI Entertainment World, Inc. v. Karen Records, Inc.*, 806 F. Supp. 2d 697, 704 (S.D.N.Y. 2011); *Castle Rock Entertainment v. Carol Pub. Group, Inc.*, 955 F. Supp. 260, 267 (S.D.N.Y. 1997) (finding willful infringement where defendant continued to publish infringing book after receiving actual notice from plaintiff demanding that defendant cease and desist publication).  In the context of statutory damages for copyright infringement, "innocence" means "that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright."  17 U.S.C. § 504(c)(2).  In awarding statutory damages, courts have broad discretion to set the amount of the award within the statutory limits.  *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1116-17 (2d Cir.1986).

When determining the amount of statutory damages to award for copyright infringement, courts consider:  "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties."  *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

### B.    Appropriate Award of Statutory Damages in This Case

In light of the relevant factors, this Court finds a statutory award of $5,000 to be reasonable in this particular case.

As to Defendants' state of mind, Plaintiff has established the willfulness of Defendants' infringement.  Plaintiff alleges that he sent two cease and desist letters to Defendants, yet Defendants never ceased the unauthorized sale of the "advanced reader's copies" of "Train to Pokipse."  (*See* Compl. at ¶¶ 20, 21; *see also* Hearing Tr. at 6.)  The Court, though, has little evidence of the expenses saved, or the profits earned, by Defendants, due to Defendants' lack of participation, and cooperation, in these proceedings.  By Plaintiff's count, Defendants retained "100 or so" copies of the book, which they were offering for sale online for $12 per book.  (*See* Compl., Ex. C.)  Estimating this number of books as 100 for calculation purposes, and then multiplying it by $12, yields a potential revenue to Defendants of $1,200.  This figure, of course, does not incorporate printing costs or any other business expenses relatable to sales, but, in the absence of any evidence on costs that could have been supplied by Defendants, the Court will estimate Defendants' ill-gotten profits as $1,200.

The revenue lost by Plaintiff due to Defendants' infringement is even more difficult to measure as, by Plaintiff's own admission, he considered the book not to be ready for release. Under these circumstances, Plaintiff would likely be unable to show that he suffered any lost sales of his own.  *See Harpercollins Publishers L.L.C. v. Gawker Media LLC*, 721 F. Supp. 2d 303, 307 (S.D.N.Y. 2010) (granting temporary restraining order against on-line media company from publishing abridged versions of copyright holder's book before the copyright-holder officially released her book, but noting that "[a] later claim for damages would probably be unavailing because of problems of measurement").  Accordingly, this case presents a situation of willful infringement, with modest profits to the infringers, at best, and no demonstrable, actual loss to Plaintiff.  Under the circumstances, while the Court retains the discretion to award anywhere from $750 to $150,000 in statutory damages, a relatively modest award would be

12

appropriate here.  *See Yurman Studio, Inc. v. Castaneda*, Nos. 07 Civ. 1241(SAS), 07 Civ.

7862(SAS), 2008 WL 4949775, at *3 (S.D.N.Y. Nov. 19, 2008) ("[S]tatutory damages cannot be

divorced entirely from economic reality.  Congress's decision to dramatically increase the cap on

statutory damages reflected the increasing role of intellectual property in the American

economy  . . . but it does not require imposition of monumental statutory damages against

smaller-scale or shorter-term willful infringers.").

       Balancing the fairly small-scale nature of Defendants' business and potential sales

against the willful nature of their infringement, their lack of participation in these proceedings,

and the intended deterrent effect of a statutory damages award, I recommend a statutory damages

award of $5,000.  This award, while far less than sought by Plaintiff, would still amount to more

than four times the revenue potentially generated by Defendants' infringement, should be

sufficient to deter future infringement, and would be supported by precedent in this circuit.  *See,

e.g., Manno v. Tennessee Production Center, Inc.*, 657 F. Supp. 2d 425, 434 (S.D.N.Y. 2009)

(company that produced karaoke CDs that contained the plaintiff's copyrighted composition held

liable for $5,000 in statutory damages, plus attorneys' fees, for its willful infringement); *Warner

Bros. Entm't Inc. v. Carsagno*, No. 06 Civ. 2676 (NG) (RLM), 2007 WL 1655666, at *4

(E.D.N.Y. June 4, 2007) (defendant who downloaded and distributed copies of major

copyrighted film found liable for willful infringement and ordered to pay $6,000 in statutory

damages); *Disney Enters., Inc. v. Merchant*, No. 6:05-CV-1489, 2007 WL 1101110, at *6

(N.D.N.Y. Apr. 10, 2007) (defendant who downloaded major studio's two copyrighted films and

made them available to others, found liable for statutory damages of $6,000 ($3,000 per willful

infringement)).[8]

I further recommend that Defendants be held jointly and severally liable for the award.

*See Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F. Supp. 730 (S.D.N.Y. 1981) ("An

individual, who directly causes a corporate defendant to infringe a copyright and personally

participates in the acts constituting infringement is jointly and severally liable for the

infringement."); *see also Luft v. Crown Publishers, Inc.*, 772 F. Supp. 1378, 1379 (S.D.N.Y.

1991) ("All participants of a copyright infringement are jointly and severally liable.  All persons

and corporations who participate in, exercise control over, or benefit from the infringement are

jointly and severally liable as copyright infringers.") (quotations and citations omitted).

## II.    PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND COSTS

### A.    Applicable Legal Standards

Under Section 505 of the Copyright Act, the Court has discretion to award reasonable

attorneys' fees and full costs to the prevailing party in a copyright action.  17 U.S.C. § 505.

"When determining whether to award attorneys fees, district courts may consider such factors as

(1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation;

(3) whether the claims or defenses were objectively unreasonable; and (4) compensation and

---

[8] *See also Twentieth Century Fox Film Corp. v. Robinson*, No. 05-CV-4709 (DLI) (RER), 2007 WL 81936, at *4 (E.D.N.Y. Jan. 9, 2007) (awarding $ 3,000 per willful infringement of major studio motion picture); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir.1993) (affirming award of $15,000 for each work willfully infringed); *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522,  (S.D.N.Y. 1991) (awarding $50,000/infringement for nine of twelve willful infringements, and $20,000/infringement for remaining three willful infringements where substantial damages were deemed necessary to deter entity with substantial income and assets (net income of $3 million and assets of $15 million) from repeating conduct); *Yurman Studio, Inc.*, 2008 WL 4949775, at *4 (awarding plaintiffs $1,500 per copyright upon which defendants infringed).

deterrence." *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010)  "The third factor – objective unreasonableness – should be given substantial weight." *Id.* at 144.

If and when a party is granted a fee award, the Court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy such an award. *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).  In determining appropriate fees, the Court begins by multiplying an attorney's reasonable hours by a reasonable hourly rate for the services performed, so as to determine a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 118-21 (2d Cir. 2007).  The party seeking fees bears the burden of demonstrating that its requested fees are reasonable. *See Blum v. Stenson,* 465 U.S. 886, 897 (1984); *Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009).  To that end, the fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983).

**B.    Adequacy of Plaintiff's Application for Fees and Costs**

As discussed above, in this Circuit, a party seeking an award of attorneys' fees must support the request with contemporaneous time records.  After Plaintiff submitted his initial Proposed Findings, this Court alerted Plaintiff that he had "failed to submit any evidentiary support" for the requested fees and costs, including "contemporaneous time records that 'specif[ied], for each attorney, the date, the hours expended, and the nature of the work done.'" (7/30/10 Order at 1-2.)  In response to the Court's Supplemental Scheduling Order, Plaintiff supplemented his Proposed Findings with an unsworn or otherwise authenticated exhibit.  (*See* Supplemental Submission.)  There is no indication that the exhibit consists of, or was derived

15

from, contemporaneous time records, although it appears to be a spreadsheet that includes the date, hours expended, and the nature of the work completed by various timekeepers.  As the exhibit is not attached to an affidavit or declaration, Plaintiff did not address the evidentiary defect pointed out by the Court.

Although courts may accept attorney time records that have been reconstructed for ease of review, the party submitting reconstructed charts or tables must demonstrate that the data contained therein was derived from contemporaneous time records.  *See Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (accepting a typed listing of hours from firm's computer records, in lieu of actual contemporaneous time records because record showed that timekeepers made contemporaneous entries as work was completed, and that their billing was based on these contemporaneous records); *Johnson v. Kay*, 742 F. Supp. 822, 837 (S.D.N.Y. 1990) ("Where the attorneys have provided the court with affidavits that have been reconstructed from contemporaneous records and that set forth all charges with specificity, fees have not been denied.").

Where a party fails to state that submitted records represent or are derived from contemporaneous time records, the fee application should be denied.  *See Kingvision Pay-Per-View, Ltd. v. Arnoat*, No. 06 Civ. 4811 (RPP) (HBP), 2007 WL 2076632, at *7 (S.D.N.Y. July 13, 2007) (adopting recommendation that court deny fee request because, although plaintiff's papers included an affidavit listing the timekeeper, date, number of hours, description of work, and hourly rate, plaintiff's papers provided no indication "that the summary of hours expended was produced based on a compilation of contemporaneous time records"); *Joe Hand Promotions, Inc. v. Fofana*, No. 06 Civ.2099 (RJH) (HBP), 2007 WL 2298372, at *7 (S.D.N.Y. Aug. 9, 2007) (same); *Ermenegildo Zenga Corp. v. 56th Street Menswear, Inc.*, No.

16

06 Civ. 7827 (HB) (GWG), 2008 WL 4449533, *6 (S.D.N.Y. Oct. 2, 2008) (denying legal fees because, even though party provided "true copies of [its law firm's] statement of fees and disbursements," including dates, hours and descriptions of work, "the application contained no indication that the law firm's statement was based on a compilation of contemporaneous time records," and "courts routinely decline to award fees when a party submits a fee request that fails to indicate that it is based on contemporaneous time records").

Here, there is no sworn, or even unsworn statement from Plaintiff that Exhibit 1 is a compilation of contemporaneous time records. The spreadsheet, offered without explanation or context, does not provide sufficient support for a fee application. Moreover, Plaintiff has already been given an opportunity to supplement his initial submission, which the Court informed him was inadequate. Under the circumstances, and given that an award of attorneys' fees under Section 505 of the Copyright Act is discretionary, I recommend that Plaintiff's request for attorneys' fee be denied.[9]

Despite this Court's request for an evidentiary showing, Plaintiff's request for costs also lacks documentation, and is similarly unaccompanied by a supporting affidavit or declaration confirming that the requested costs were actually spent. (*See* Supplemental Submission.) For these reasons, I also recommend that Plaintiff's request for costs be denied.

---

[9] The Court also notes that, despite its explicit instruction to provide information showing how counsel's billing rates were justified by counsel's experience (*see* 7/30 Order at 2), Plaintiff has still provided no information concerning the level of experience of the listed timekeepers, or even whether these individuals were attorneys or paralegals (*see* Supp. Sub., Ex. 1). Instead, Plaintiff's proffered exhibit merely provides the names of the timekeepers under the heading "Attorney/Paralegal's Name." (*Id.*) From Plaintiff's submission, it is not possible to determine whether the timekeepers' stated hourly rates were "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896.

## CONCLUSION

For the reasons set forth above, I recommend finding Defendants jointly and severally liable for statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $5,000. I further recommend denying Plaintiff's request for an award of attorneys' fees and costs.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe, United States Courthouse, 500 Pearl Street, Room 920, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Gardephe. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
      March 30, 2012

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

18

Copies to:

Hon. Paul G. Gardephe, U.S.D.J.

Anna Vishev, Esq.
Ostrolenk, Faber, LLP
1180 Avenue of the Americas
New York, NY 10036

Law Office of Olga Suslova, P.C.
8622 Bay Pkwy, Ste. 2C
Brooklyn, NY 11214

Estate of Mr. Richard Torrence
20 West 64th Street, #32P
New York, NY 10023

Mr. Marshall Yaeger
20 West 64th Street, #32P
New York, NY 10023

Anchor-International Foundation, Inc.
20 West 64th Street, #32P
New York, NY 10023

Circles International
20 West 64th Street, #32P
New York, NY 10023