UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAMI SHAMIR,

                Plaintiff,

v.

ANCHOR-INTERNATIONAL FOUNDATION, INC., CIRCLES INTERNATIONAL, LIGHTNING SOURCE, RICHARD TORRENCE, and MARSHALL YAEGAR, inclusive,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/30/13

**ORDER**

10 Civ. 725 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      Plaintiff Rami Shamir filed this action against Defendants Anchor-International Foundation, Inc. ("Anchor"), Circles International ("Circles"), Lightning Source, Richard Torrence, and Marshall Yaegar, claiming copyright infringement in violation of Section 106 of the Copyright Act, and raising state law claims of invasion of privacy, misappropriation, and unfair competition. (Cmplt. ¶¶ 23-25, 33-34, 38) On February 10, 2010, Plaintiff voluntarily dismissed as against Defendant Lightning Source. (Dkt. No. 9)

      None of the remaining defendants answered or otherwise responded to the Complaint. Accordingly, on May 18, 2010, this Court entered a default judgment against Anchor, Circles, Torrence and Yaegar (Dkt. No. 15), and referred the action to Magistrate Judge Debra Freeman for an inquest on damages. (Dkt. No. 16) On March 20, 2012, Judge Freeman issued a Report and Recommendation ("R&R") recommending that this Court award Plaintiff $5,000 in statutory damages – pursuant to 17 U.S.C. § 504(c) – and deny Plaintiff's request for attorneys' fees and costs. (Dkt. No. 31) Yaegar filed written objections to the R&R (Dkt. No.

32); no other party has submitted objections. For the reasons stated below, this Court will adopt Judge Freeman's R&R in its entirety.

## BACKGROUND

In 2007, Plaintiff authored and registered a copyright for a novel entitled, "Train to Pokipse." (R&R at 2 (citing Cmplt. ¶¶ 4, 10)) Defendant Anchor is a not-for-profit organization that owns Defendant Circles, a publishing company. (R&R at 2 (citing Cmplt. ¶¶ 5, 6)) Defendant Torrence, who is now deceased, was the executive director of Anchor, and Defendant Yaegar is the president of Circles. (R&R at 2 (citing Cmplt. ¶¶ 8, 9)) In May 2009, Yaegar and Torrence, via Anchor, offered a grant to assist Plaintiff with the publication of "Train to Pokipse." (R&R at 2 (citing Cmplt. ¶¶ 11, 12)) Yaegar helped Plaintiff copy-edit the novel and by September 2009, Defendants had printed "advanced reader's copies" of the book. (R&R at 2 (citing Cmplt. ¶¶ 14, 16)) Plaintiff never transferred any of his copyright or publication rights to Defendants, however. (R&R at 2 (citing Cmplt. ¶¶ 13, 17))

In October 2009, Plaintiff discovered that Defendants were selling his novel through Defendants' website and various third-party websites. (R&R at 2 (citing Cmplt. ¶¶ 17, 18)) Plaintiff sent a cease and desist e-mail to Lightning Source – a publishing company used by Circles – on October 9, 2009. (R&R at 2-3 (citing Cmplt. ¶¶ 7, 20)) Lightning Source responded that all inquiries should be directed to Yaegar, and forwarded the e-mail to Yaegar. (R&R at 3 (citing Cmplt. ¶ 20)) Plaintiff sent another cease and desist letter to all Defendants on November 11, 2009. (R&R at 3 (citing Cmplt. ¶ 21))

On January 29, 2010, Plaintiff filed a complaint alleging copyright infringement, pursuant to 17 U.S.C. §§ 106(1), (3), and (5); invasion of privacy under New York Civil Rights Law § 51; and misappropriation and unfair competition under New York common law. (R&R at

2

3) On February 11, 2010, this Court issued a preliminary injunction enjoining Defendants from taking any action that infringed Plaintiff's copyright. (Dkt. No. 10)

None of the Defendants answered or otherwise responded to the Complaint. Accordingly, on May 3, 2010, this Court issued an order requiring Defendants to show cause why a default judgment should not be entered against them. (Dkt. No. 13) Defendants filed no response to the order to show cause, and Plaintiff moved for a default judgment. (Dkt. No. 14) On May 18, 2010, this Court entered a default judgment against Defendants Anchor, Circles, Torrence, and Yaegar (Dkt. No. 15), and referred the matter to Judge Freeman for an inquest on damages. (Dkt. No. 16)

Before Judge Freeman, Plaintiff sought $150,000 per defendant in statutory damages on the copyright infringement claim, $38,176 in attorneys' fees, and $1,500 in costs. (R&R at 5 (citing Supplemental Submission with Respect to Damages (Dkt. No. 19))) Plaintiff did not request any damages with respect to his state law claims. (R&R at 5-6 (citing Supplemental Submission with Respect to Damages (Dkt. No. 19)))

On August 2, 2010, Defendant Yaegar sent a letter to Judge Freeman in his capacity as "Administrator" of Anchor. (R&R at 6 (citing Yaegar Ltr. (Dkt. No. 22))) In response, Judge Freeman issued an order noting that, as a pro se litigant, Yaegar could not make a submission on behalf of a corporation such as Anchor (Dkt. No. 20) (citing Grace v. Bank Leumi Trust Co., 443 F.3d 180, 192 (2d Cir. 2006))), and also could not act on behalf of the other individual defendants. (Id.) Judge Freeman also noted that Yaegar's August 2, 2010 letter dealt only with liability, and did not address the damages issue that had been referred to Judge Freeman. (R&R at 6 (citing August 2, 2010 Yaegar Ltr. (Dkt. No. 22)))

3

Accordingly, on November 23, 2010, Judge Freeman issued an order giving Defendants a final opportunity to respond to Plaintiff's submission on damages. (R&R at 6-7 (citing Scheduling Order for Damages Inquest (Dkt. No. 20))) Judge Freeman's order explicitly informed the Defendants that Anchor could make a submission only through counsel, and that Torrence could make a submission either pro se or through counsel. (Dkt. No. 20)

On December 3, 2010, Defendant Torrence, proceeding pro se, sent a submission to Judge Freeman that addressed liability. Torrence's remarks concerning damages were limited to a representation that Defendants had no assets and that, accordingly, any damages award would be uncollectible. (Dkt. No. 21 at 5 )) Yaegar sent additional letters to Judge Freeman contesting liability and claiming financial inability to satisfy any type of judgment. (R&R at 8 (citing Yaegar Ltrs. (Dkt. Nos. 28, 29)))

On January 24, 2012, Judge Freeman conducted an evidentiary hearing on damages. None of the Defendants appeared at the hearing. (R&R at 8-9) At the hearing, Plaintiff testified about Defendants' continued sale of "advanced reading copies" of "Train to Pokipse," despite his cease and desist letters and e-mail, and about the damages that Plaintiff had suffered as a result of Defendants' infringing activities. (R&R at 9) After the hearing, Yaegar sent a letter to the court asserting that only 100 "advanced reading copies" of the novel were ever printed by the Defendants. (R&R at 9)

On March 30, 2013, Judge Freeman issued her R&R. (Dkt. No. 31) In the R&R, Judge Freeman found that Defendants willfully infringed Plaintiff's copyright by continuing to sell copies of "Train to Pokipse" despite Plaintiff's cease and desist letters, and that Defendants had realized estimated profits of $1,200 from their infringing activities. (R&R at 12 (citing Cmplt. ¶¶ 20, 21; Hearing Tr. at 6)) Judge Freeman also determined that Plaintiff suffered no

4

losses due to Defendants' infringement because, by Plaintiff's own admission, the book was not ready for release. (R&R at 12) Accordingly, Judge Freeman concluded that "this case presents a situation of willful infringement, with modest profits to the infringers, at best, and no demonstrable, actual loss to Plaintiff. Under the circumstances, while the Court retains the discretion to award anywhere from $750 to $150,000 in statutory damages, a relatively modest award would be appropriate here." (R&R at 12-13)

Judge Freeman recommended a $5,000 statutory damages award on Plaintiff's copyright infringement claim. (R&R at 13) She determined that "[t]his award, while far less than sought by Plaintiff, would still amount to more than four times the revenue generated by Defendants' infringement, should be sufficient to deter future infringement, and would be supported by precedent in this circuit." (R&R at 13 (collecting cases)) Judge Freeman further recommended that Defendants be held jointly and severally liable for the award. (R&R at 14) Finally, Judge Freeman recommended that this Court deny Plaintiff's request for attorneys' fees and costs, because Plaintiff's unsworn, unauthenticated submission, and non-contemporaneous records, do not substantiate Plaintiff's requested award. (R&R at 15-17)[1]

On April 5, 2012, Yaegar submitted written objections to Judge Freeman's R&R.[2] (Dkt. No. 32) Yaeger's objections address liability and not damages. (Id. at 1-2) No other party filed an objection.

---

[1] Judge Freeman also recommended that no damages be awarded for Plaintiff's state law claims, because Plaintiff did not request – and thus had waived – any right to damages on those claims. (R&R at 8 n.7) This Court finds no clear error in this determination.

[2] Yaegar's objections were submitted on the letterhead of Anchor. As Judge Freeman noted, as a pro se party, Yaegar may not appear on behalf of a corporation or any other defendant. (R&R at 6 (citing Grace, 443 F.3d at 192)).

## DISCUSSION

### I. STANDARD OF REVIEW

This Court "may accept, reject, or modify in whole or in part" findings or recommendations issued by a magistrate judge. 28 U.S.C. § 636(b)(1). A district court must review de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1)(C). "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (citation and internal quotation marks omitted).

"The objections of parties appearing pro se are 'generally accorded leniency' and should be construed 'to raise the strongest arguments that they suggest.'" DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (quoting Milano v. Astrue, 05 Civ. 6527, 2008 WL 4410131, at *24 (S.D.N.Y. Sept. 26, 2008) (internal quotation marks omitted)). "'Nonetheless, even a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument.'" Id. (quoting Pinkney v. Progressive Home Health Servs., No. 06 Civ. 5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) (internal quotations marks omitted)).

6

## II. THE R&R IS NOT CLEARLY ERRONEOUS

In his objections, Yaegar argues that: (1) Plaintiff had already published and sold an earlier version of the novel; (2) Defendants only published 100 "Advanced Reading Copies" of "Train to Pokipse"; (3) Plaintiff put ads for "Train to Pokipse" on the Internet; (4) Plaintiff is mentally unstable; (5) Plaintiff's suit is motivated by a desire to extort money from Defendants; (6) Plaintiff has no proof that Defendants sold his book; (7) the copies Defendants published were never sold; (8) advanced reading copies cannot be copyrighted and thus Plaintiff could not obtain a copyright for Defendants' edited version of "Train to Pokipse"; and (9) Plaintiff picked up the approximately 100 published copies of the novel from Yaegar's apartment building after Defendants severed ties with Plaintiff. (Yaegar Obj. at 1-2) These arguments do not address Judge Freeman's findings concerning damages, but instead relate to liability.

To the extent that Yaegar's objections could be construed as addressing damages, his objections lack specificity and are not directed at particular findings of fact or conclusions of law in the R&R. Accordingly, this Court will review Judge Freeman's R&R for clear error. See Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241(RMB)(FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) ("'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'") (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)).

### A. Statutory Damages

In making her recommendations, Judge Freeman applied the correct standard for determining a statutory damages award under the Copyright Act, 17 U.S.C. § 504(c). Judge Freeman considered: "'(1) the infringers' state of mind; (2) the expenses saved, and profits

7

earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.'" (R&R at 11 (quoting Bryant v. Media Right Prods., Inc, 603 F.3d 135, 144 (2d Cir. 2010)))

As to the infringers' state of mind, Judge Freeman correctly found that Defendants willfully infringed Plaintiff's copyright because they continued to offer copies of "Train to Pokipse" for sale even after Plaintiff sent them multiple cease and desist letters. (R&R at 12) Judge Freeman found that there was little evidence as to the expenses saved, and profits earned, by the Defendants, because they had not participated in the proceedings. (R&R at 12) Judge Freeman determined, however, that because Defendants retained approximately 100 copies of the book, which were advertised for sale at $12 each, the Defendants estimated profit was $1,200. (R&R at 12) There is no clear error in Judge Freeman's findings, especially "in the absence of any evidence on costs that could have been supplied by Defendants," had they chosen to participate in the damages inquest hearing. (See R&R at 12)

There is also nothing clearly erroneous in Judge Freeman's finding that Plaintiff could not substantiate any revenue loss because he admitted that the book was not yet ready for publication. (R&R at 12); see Harpercollins Publishers L.L.C. v. Gawker Media LLC, 721 F. Supp. 2d 303, 307 (S.D.N.Y. 2010) (granting temporary restraining order against on-line media company from publishing abridged versions of copyright holder's book before the copyright-holder officially released her book, but noting that "[a] later claim for damages would probably be unavailing because of problems of measurement").

Accordingly, this Court agrees with Judge Freeman that where, as here, there is "willful infringement, with modest profits to the infringers, at best, and no demonstrable, actual

8

loss to Plaintiff," a modest statutory award of $5,000 is appropriate. (R&R at 12-13 (collecting cases with similar statutory damages awards)); see Yurman Studio, Inc. v. Castaneda, Nos. 07 Civ. 1241(SAS), 07 Civ. 7862(SAS), 2008 WL 4949775, at *3 (S.D.N.Y. Nov. 19, 2008) ("[S]tatutory damages cannot be divorced entirely from economic reality. . . . [Courts should not] impos[e] . . . monumental statutory damages against smaller-scale or shorter-term willful infringers.").

### B. <u>Attorneys' Fees and Costs</u>

Judge Freeman also correctly denied Plaintiff's application for attorneys' fees and costs. The Second Circuit requires that a party seeking an award of attorneys' fees support the request with contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983)). Here, Plaintiff submitted only an unsworn, unauthenticated document that does not substantiate the dates when work was performed, the hours expended, or the nature of the work completed by the various timekeepers. (R&R at 15-16) Judge Freeman also noted that, in violation of Carey, Plaintiff had not put forth either a sworn or unsworn statement representing that his submission constituted a compilation of contemporaneous time records. (R&R at 17)

As to costs, Plaintiff submitted no affidavit or declaration confirming that the requested costs were actually incurred. (Id.)

Given these defects, Plaintiff's submissions do not provide an adequate basis for an award of costs or attorneys' fees. See Ermenegildo Zenga Corp. v. 56th Street Menswear, Inc., No. 06 Civ. 7827 (HB)(GWG), 2008 WL 4449533, at *6 (S.D.N.Y. Oct. 2, 2008) (noting

that "courts routinely decline to award fees when a party submits a fee request that fails to indicate that it is based on contemporaneous time records").

## CONCLUSION

The Court adopts the findings and conclusions set forth in Judge Freeman's Report and Recommendation in their entirety. It is hereby ORDERED that Defendants are jointly and severally liable for statutory damages, pursuant to the Copyright Act, 17 U.S.C. § 504(c), in the amount of $5,000. Plaintiff's request for attorneys' fees and costs is denied.

The Clerk of the Court is directed to enter judgment for Plaintiff and to close this case.

Dated: New York, New York
July 29, 2013

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

10